IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DARREN C. BLUEMEL,<br><br>      Plaintiff,<br><br>  v.<br><br>SCOTT V. CARVER et al.,<br><br>      Defendants. | Case No. 2:06-CV-32 DB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

    Plaintiff, Darren C. Bluemel, an inmate at the Utah State Prison, filed this civil rights suit under 42 U.S.C. § 1983 with the assistance of counsel.  *See* 42 U.S.C.S. § 1983 (2007).  The case was originally filed in the Third District Court for the State of Utah and was properly removed to this Court by Defendants.  Before the Court is Defendants' Motion for Judgment on the Pleadings in favor of Defendants Carver, Chabries, Brough, Graff and Evans.

## ANALYSIS

### I. Rule 12(c) Standard

    Rule 12(c) provides that "after the pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings filed by a defendant is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See*

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). On a Rule 12(b)(6) motion the Court judges the sufficiency of the complaint, accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

"The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, No. 06-5222, 2007 WL 4376068, at *3 (10th Cir. Dec. 17, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). "'Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level'. . . . That is, there must be 'enough facts to state a claim to relief that is plausible on its face.'" *Lynn v. Anderson-Varella*, No. 07-3046, 2007 WL 4230701, at *3 (10th Cir. Nov. 30, 2007) (quoting *Bell Atl. Corp.*, 127 S.Ct. at 1965, 1974). Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk,*

2

*L.L. C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

The degree of specificity necessary to establish plausibility and fair notice depends on the context of the case, including whether the defendants have asserted qualified immunity.  *Id.* at 1248-49.  As the Tenth Circuit has recognized, "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants."  *Id.*  Moreover, "[t]he *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.'"  *Id.* (citing *Anderson v. Creighton, 483 U.S. 635, 646 n. 6, 107 S. Ct. 3034, 97 L. Ed.2d 523 (1987)*.

## II. Plaintiff's Allegations

According to the Complaint, Plaintiff was convicted in 1999 and sentenced to serve a term of imprisonment in the custody of the Utah Department of Corrections (UDC).  Plaintiff was initially confined at the Central Utah Correctional Facility in

3

Gunnison, Utah, but was subsequently transferred to the Garfield County Jail ("jail") under a contract with UDC to house state inmates.  Upon his transfer to the jail Plaintiff was assigned to a cell next to another state inmate named Daniel Ducret. Plaintiff alleges that Ducret "harbored ill will towards Plaintiff" and had told the jail commander and jail staff of "the hostilities he harbored toward Plaintiff."  (Compl. ¶¶ 17-18.) Plaintiff became concerned for his safety and told "certain individuals, including State psycholigist Dr. Erik Schlosser," about his concerns.  (Compl. ¶ 39.)  The complaint states that "Dr. Schlosser conveyed those safety concerns to others, including but not limited to Defendant Graff."  (Compl. ¶ 40.)

On November 27, 2001, Plaintiff was assaulted by Ducret at the jail.  The assault occurred when a jail officer, Defendant Fullmer, simultaneously released Plaintiff and Ducret from their cells during laundry pickup.  Plaintiff states that he was pushed down a flight of stairs then kicked and beaten by Ducret. Plaintiff alleges that Fullmer and other unidentified jail officers who were present failed to prevent the attack or to appropriately intervene once it began.  Following the attack, Plaintiff was taken to a local hospital and treated for injuries to his back, leg, hip and face.  Plaintiff continued to have "aches and pains" for weeks following the attack.  On December 27, 2001, Plaintiff was transferred to the Utah State Prison

where he received additional treatment.

Plaintiff's Complaint asserts that Defendants violated the Eighth Amendment by failing to adequately protect him from Ducret. The Complaint seeks compensatory and punitive damages from Defendants, jointly and severally, in their individual capacities.

### III. Legal Context

In evaluating the sufficiency of Plaintiff's Complaint the Court must take into consideration the context of the case and the applicable law. See *Robbins*, 519 F.3d at 1248. As previously mentioned, the context of this case is an Eighth Amendment claim of cruel and unusual punishment against UDC officials who have asserted the defense of qualified immunity. To state a claim under the Eighth Amendment based on failure to protect, an inmate must allege facts showing: first, that he is incarcerated under conditions posing a substantial risk of serious harm; and, second, that the prison official "'has a sufficiently culpable state of mind,' i.e., that he or she is deliberately indifferent to the inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A prison official's state of mind must be measured by a subjective standard. *Id.* at 835. Thus, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.*  A defendant is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.  The deliberate indifference standard is not satisfied by either negligence or constructive notice.  *Id.* at 835, 841.

Defendants' assertion of qualified immunity is also relevant in terms of the context of this case.  See *Robbins*, 519 F.3d at 1248-49.  The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial."  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, courts are required to address immunity questions at the earliest possible stage in litigation.  *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam)).

When a defendant asserts qualified immunity the plaintiff is faced with a "heavy two-part burden."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must first establish that the facts, taken in the light most favorable to the

6

plaintiff, show that the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. "[T]he next, sequential step is to ask whether the right was clearly established." Id. This determination must be made "in the light of the specific context of the case, not as a broad general proposition." Id. And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden" the defendant is entitled to dismissal the deficient claims.

### IV. Sufficiency of Plaintiff's Complaint

#### A. Supervisor Liability: Carver, Chabries and Brough

Defendant's motion asserts that the Complaint fails to state a claim against Carver, Chabries or Brough ("the supervisory defendants") because it does not show an affirmative link between the actions of these individuals and any alleged violation of Plaintiff's constitutional rights.

It is well settled that liability for a civil rights violation cannot be based on *respondeat superior*. See West v. Atkins, 487 U.S. 42, 54 n.12, 108 S. Ct. 2250, 2258 n.12 (1988); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). Instead, "'[p]ersonal participation is an essential allegation in a § 1983 claim.'" Id. Thus, to state a cognizable claim under §

1983 against a supervisor, a plaintiff must allege facts showing "that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).

When the events giving rise to Plaintiff's claim occurred, Carver, Chabries and Brough were each directors within UDC. The Complaint alleges that, as directors, the supervisory defendants were responsible for "overseeing" certain aspects of prison operations. (Compl. ¶ 6-8.) However, the Complaint does not allege any direct involvement between these defendants and Plaintiff, nor does it allege that any of these defendants were subjectively aware of any threat to Plaintiff's safety. Plaintiff argues that the supervisory defendants "had sufficient contact and involvement in this case because of their overseeing, training or supervisory roles." (Pla.'s Mem. Opp. at 10.) This argument clearly shows that Plaintiff's claims against Carver, Chabries and Brough are premised on a *respondeat superior* theory of liability, not personal participation.

The Complaint also fails to allege any clear link between defendants' supervisory decisions and Plaintiff's injuries. Plaintiff does not allege that a specific decision or policy implemented by any of these defendants led directly to the attack

by Ducret.  Although Plaintiff implies that the practice of housing UDC inmates at the jail made the attacks more likely, he does not offer any support for this theory, nor does he allege that any of the named supervisory defendants were directly responsible for this policy.

Finally, Plaintiff does not allege specific facts showing that lax supervision or training played a significant role in the attack.  While Plaintiff correctly asserts that certain forms of supervisory misfeasance may be sufficient to establish supervisor liability he does not make a plausible showing that any such misfeasance occurred here.  Plaintiff's conclusory allegations that UDC policies were deficient in general respects, or that the attack on Plaintiff might have been prevented if defendants were more vigilant, are not sufficient to pass muster under the *Twombly* standard.

Thus, the Court concludes that Plaintiff's complaint fails to state a viable claim for relief against Defendants Carver, Chabries and Brough.

### B. Defendants Graff and Evans

The Court now turns to Plaintiff's allegations against Defendants Graff and Evans.  According to the Complaint, Graff and Evans were employed by UDC as "Correctional Habilitative Specialists," or "caseworkers," at the Garfield County Jail and were responsible for coordinating with UDC regarding the needs of

state inmates housed at the jail.  (Compl. ¶¶ 5-11.)  Plaintiff further alleges that these defendants were responsible for "being a liaison and advocate to ensure that [Plaintiff's] needs . . . were met."  (Compl. ¶ 11.)  Despite this broad job description the Complaint does not allege that Graff or Evans had any direct interaction with Plaintiff prior to the assault or that they were involved in the day-to-day management of Plaintiff's affairs.  The only specific allegation in the Complaint regarding Evans is that she participated in the decision to transfer Plaintiff back to a UDC facility following the attack.  (Compl. ¶ 31.)  This allegation is clearly insufficient to make out a showing of deliberate indifference.  Thus, Plaintiff's allegations do not state a claim for relief against Evans.

Although the allegations against Graff are also extremely limited, there is one key allegation that sets Graff apart from the other UDC defendants.  According to the Complaint, Graff was informed by Dr. Schlosser, prior to the attack, that Ducret had made threats against Plaintiff.  (Compl. ¶ 40.)  Thus, it appears that Graff is the only named UDC defendant who allegedly had any knowledge of a potential threat to Plaintiff's safety prior to the attack.  Although the Complaint does not provide any details regarding the nature or timing of this communication, this allegation supports the conclusion that Graff was "aware of facts from which the inference could be drawn that a substantial risk

10

of serious harm exist[ed]."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Based on this fact, it appears that Plaintiff's allegations regarding Graff are sufficient to "raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1965, 1974.  Thus, the Court concludes that Graff is not entitled to judgment on the pleadings.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings is **denied** as to Defendant John Graff; and, Defendant's Motion for Judgment on the Pleadings is **granted** as to Defendants Carver, Chabries, Brough and Evans.

DATED this 28th day of May, 2008.

BY THE COURT:

_____
Dee Benson
United States District Judge